AO 91 (Rev. 11/82)     CRIMINAL COMPLAINT     UNDER SEAL

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JASON MELVIN DOTY | DOCKET NO.<br><br>MAGISTRATE'S CASE NO. **SA 19-528M** |

Complaint for violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii)

| NAME OF MAGISTRATE JUDGE | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Orange County, California |
|---|---|---|
| DATE OF OFFENSE<br>March 20, 2019 | PLACE OF OFFENSE<br>Orange County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about March 20, 2019, in Orange County, in the Central District of California, defendant JASON MELVIN DOTY knowingly and intentionally distributed at least 50 grams of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

LODGED 2019 JUL -2 PM 2:22 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. SANTA ANA BY_____

FILED CLERK, U.S. DISTRICT COURT JUL 2 2019 CENTRAL DISTRICT OF CAL. BY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT /S/<br>**JAMES SANDERS**<br>OFFICIAL TITLE<br>Senior Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>KAREN E. SCOTT | DATE<br>July 2, 2019 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA Bradley Marrett x3505     REC: Detention

**A F F I D A V I T**

I, James Sanders, being duly sworn, hereby declare and state as follows:

**INTRODUCTION**

1. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since June 1996. I successfully completed the Criminal Investigations Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I also completed the ATF Special Agent Basic Training at the National Training Academy in Brunswick, Georgia. During those courses of study, I received training in the investigation of federal firearms, explosives, and narcotics violations.

2. I have conducted investigations involving the possession and use of firearms, explosives, and narcotics. While employed as an ATF agent, I have been involved in numerous investigations dealing with the possession, manufacturing, distribution, and importation of firearms as well as controlled substances in violation of Titles 18, 21, and 26 of the United States Code. I have also participated in the undercover purchase of firearms and narcotics.

**PURPOSE OF AFFIDAVIT**

3. This affidavit is made in support of a criminal complaint and arrest warrant against Jason Melvin Doty ("DOTY") for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii) (Distribution of Methamphetamine).

4. Because this affidavit is being submitted for the limited purpose of securing the requested criminal complaint and arrest warrant, I have not included each and every fact that may be known to me and other law enforcement personnel concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause for the requested criminal complaint and arrest warrant. Where statements of others are set forth in this affidavit, they are set forth in substance and in part, unless otherwise indicated. The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, reports and database queries, and, as noted, my personal knowledge and training and experience.

## SUMMARY OF INVESTIGATION

5. On February 28, 2019, a reliable confidential informant ("CI") for the ATF participated in controlled purchase of methamphetamine from DOTY. This transaction was audio recorded. On March 20, 2019, an ATF Special Agent acting in an undercover ("ATF UC") capacity along with the CI participated in another controlled purchase of methamphetamine from DOTY. This transaction was audio and video recorded. The CI also participated in numerous text messages to arrange these drug transactions. Both of the controlled purchases were controlled and monitored by law enforcement officers, specifically, ATF Special Agents and Orange County Sheriff Department Investigators.

**STATEMENT OF PROBABLE CAUSE**

**A.  Background**

6.  I am the lead ATF special agent responsible for the investigation of DOTY. In that capacity, I have directed and participated in both controlled purchases described below, debriefed the CI and ATF UC before and after each transaction, conducted physical surveillance of the controlled purchases, and reviewed all audio/video recordings of the controlled purchases.

7.  The CI that participated in this investigation has a criminal history. A criminal records check revealed a 2014 misdemeanor conviction for violation of the California Health and Safety Code 11377(a) (Possession of a Controlled Substance). The CI was also charged in a complaint in a case out of the Western District of Pennsylvania and may receive cooperation credit in that case for his participation in this investigation. In my experience with the CI, I have found the CI to provide reliable information.

**B.  February 28, 2019 Purchase of Approximately One Ounce of Methamphetamine from DOTY.**

8.  From approximately February 7, 2019, to February 28, 2019, the CI exchanged text messages with DOTY's known cellular telephone number, 714-623-4045, regarding the sale of methamphetamine. The following is a summary of the messages:

- On or about February 7, 2019, the CI received a text message from 714-623-4045 that read "Hope ur doing good [CI's first name]";

3

- On February 8, 2019, at approximately 4:30 a.m., the CI received a text message from 714-623-4045 that read "What's up [CI's first name] don't for get about me";

- On February 10, 2019, at approximately 11:30 a.m., the CI received a text message from 714-623-4045 that read "Hit me up [CI's first name]";

- On February 27, 2019, at approximately 6:44 p.m., the CI exchanged text messages with DOTY's known cellular telephone number, 714-623-4045. The text conversation stated, in substance, that DOTY will sell the CI an ounce of methamphetamine for $220 at the Lemon Tree Hotel (in Anaheim) before noon on February 28, 2019;

- On February 28, 2019, at approximately 10:30 a.m., the CI sent a text message to 714-623-4045 stating "Heading your way we all good" and DOTY responded via text "I m here".

9. On that same day, February 28, 2019, I met and briefed the ATF/OCSD task force at a predetermined briefing location regarding the undercover operation. In addition, the CI was equipped with an electronic audio monitoring recording device. The CI was also provided with $220 in U.S. Government Funds.

10. At approximately 10:50 a.m., I surveilled the CI from the predetermined briefing location to the general area of the Lemon Tree Hotel located at 1600 East Lincoln Avenue, Anaheim, California, where OCSD Investigator Justin Chevalier maintained visual contact with the CI from a nearby location. I monitored

4

all audio communications of the CI and DOTY until the conclusion of the narcotic purchase with DOTY.

11. At approximately 10:57 a.m., I was advised by OCSD Investigator Chevalier that the CI had met DOTY in the parking lot near the entrance of the Lemon Tree Hotel's parking area and that DOTY had entered the CI's vehicle. OCSD Investigator Chevalier stated that DOTY was wearing a black t-shirt and a black baseball hat with a red bill.

12. At approximately 11:07 a.m., I was advised by OCSD Investigator Chevalier that DOTY had exited the CI's vehicle and walked away from the parking area. I observed the CI exit the parking lot area and surveilled the CI back to the predetermined debrief location, where I obtained from the CI the approximately one ounce of methamphetamine that was purchased from DOTY.

13. At the predetermined debrief location, I, along with OCSD Investigators Chevalier and Art Tiscareno, debriefed the CI regarding the transaction. The CI stated that he met DOTY in the parking area near the entrance of the Lemon Tree Hotel's parking lot area, that DOTY had entered the CI's vehicle from the passenger side, that DOTY had reached in DOTY's pocket and presented a clear plastic baggy that contained what appeared to be approximately one ounce of methamphetamine, and that DOTY handed the bag to the CI. The CI stated that, in return for the approximately one ounce of methamphetamine, the CI handed DOTY the $220 in U.S. Government Funds that I had previously given to the CI.

14. I then displayed a DMV photograph of DOTY dated August 18, 2015, to the CI. The CI confirmed that the person in the DMV photograph was the same individual who the CI knows to be DOTY and the same individual who had just sold the CI the approximately one ounce of methamphetamine in the parking lot of the Lemon Tree Hotel.

15. I displayed the same DMV photograph of DOTY to OCSD Investigator Chevalier who stated that the individual that OCSD Investigator Chevalier observed enter and exit the CI's vehicle in the parking lot of the Lemon Tree Hotel is the same individual as depicted in the DMV photograph.

16. The methamphetamine purchased from DOTY on February 8, 2019, was sent to the DEA Southwest Lab for analysis. I have reviewed a report of that analysis. According to the analysis report, the substance purchased was in fact methamphetamine, with a purity level of 99%, a net weight of 27.9 grams, and an actual pure substance weight of 27.6 grams.

C. **March 20, 2019 Purchase of Approximately Two Ounces of Methamphetamine from DOTY.**

17. On March 19, 2019 and March 20, 2019, the CI exchanged text messages with 949-383-1796 (DOTY's new, known cellular telephone number) regarding the sale of methamphetamine. I reviewed the text messages and determined the following:

- On or about March 19, 2019, the CI sent five text messages to 949-383-1796. In substance, the CI asked DOTY for the price of two ounces of methamphetamine and whether the CI could pick it up the next day in

Huntington Beach CA.  The text messages read: "Hey", "Can you get me 2 oz white tomorrow", "Cool hot you up about 1130 ish how much," and "You gonna be in Huntington tomorrow";

- On that same day, the CI received four text messages from 949-383-1796 in which, in substance, DOTY confirmed that he has the two ounces of methamphetamine for $400 and that DOTY should be in Huntington Beach.  The text messages read:  "Yes", "Ya and 400 but anything more would be my profit," and "I hope";

- On March 20, 2019, DOTY sent the CI a text message from 949-383-1796, which stated, in substance, that DOTY would be in Orange County Superior Court in Westminster, known as "West Court," that day with the two ounces of methamphetamine and asked the CI to meet him at the court.  The text message reads: "Dave I have to.go to court today so if u want to meet me at West court I have them on me ok";

- On that same day, the CI sent four text messages to 949-383-1796, in which, in substance, the CI asked what time and where are they meeting.  The text messages read: "What time", "What's up", "So where are we meeting", and "About 15 min away from west court".

18.  On that same day, March 20, 2019, I met and briefed the ATF/OCSD task force at a predetermined briefing location regarding the undercover operation.  The ATF UC was equipped

7

with an electronic audio/video monitoring recording device and was also provided with $400 in U.S. Government Funds.

19. At approximately 11:50 a.m., I surveilled the ATF UC and the CI from the predetermined briefing location to the general area of 8141 13th Street, Westminster, California. I monitored all audio communications of the ATF UC, the CI, and DOTY until the conclusion of the narcotic purchase with DOTY.

20. At approximately 12:05 p.m., I was advised by the ATF UC that the undercover deal had been completed with DOTY.

21. At approximately that same time, I observed the ATF UC and the CI exit the parking lot area in the CI's vehicle and drive back to the predetermined debrief location, where I obtained from the ATF UC the approximately two ounces of methamphetamine that was purchased from DOTY.

22. At the predetermined debrief location, I, along with OCSD Investigators Chevalier and Tiscareno, debriefed the ATF UC and the CI regarding the transaction. The ATF UC and the CI both stated that they met DOTY in the parking lot area of the West Justice Center, located at 8141 13th Street, Westminster, California. The ATF UC stated that DOTY had approached the ATF UC, who was sitting in the passenger side of the CI's vehicle. The ATF UC stated that DOTY then handed the ATC UC a white envelope which contained approximately two ounces of methamphetamine and in exchange the ATF UC handed DOTY $400 in U.S. Government Funds.

23. I displayed to the ATF UC and the CI a DMV photograph of DOTY dated August 18, 2015, and both confirmed that the

8

person depicted in the DMV photograph was the same individual who had just sold them the approximately two ounces of methamphetamine.

24.  The methamphetamine purchased from DOTY on March 20, 2019, was sent to the DEA Southwest Lab for analysis. I have reviewed a report of that analysis. According to the analysis report, the substance purchased was in fact methamphetamine, with a purity level of 98%, a net weight of 55 grams, and an actual pure substance weight of 53 grams.

### D.  **Criminal History of DOTY**

25.  On April 5, 2019, I reviewed a criminal history report ("rap sheet") for DOTY. Based on my review of that report, DOTY has sustained the following drug-trafficking related convictions: a felony conviction for a violation of California Health and Safety Code section 11379 (Sale or Transportation of a Controlled Substance) in case number 17WF1300.

///
///
///
///
//
///
///
///
///
///
///

## CONCLUSION

29. Based on the foregoing facts, and my training and experience, I submit there is probable cause to believe that Jason Melvin Doty distributed a controlled substance (methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).

.

/s/
_____
James Sanders
ATF, Senior Special Agent

Subscribed to and sworn before me this 2nd day of July, 2019.

KAREN E. SCOTT
_____
HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE